IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

2019 AUG -6 AM 10: 18

| | |
|---|---|
| JOHN M. SCHMITZ, ANNA SVEC, GOLDA BOU, and JUAN RAMOS, Plaintiffs, | )<br>)<br>)<br>) |
| v. | ) Case No.<br>)<br>) |
| MARION COUNTY BOARD OF ELECTIONS, CONNIE LAWSON, and MYLA ELVIDGE, Defendants. | )<br>) 1:19-cv-3314 TWP-MPB<br>)<br>)<br>) |

COMPLAINT AND REQUEST FOR PRELIMINARY INJUNCTION

This is a complaint brought by the Plaintiff identified below, pursuant to 42 U.S.C. 1983, alleging violations of his rights under the United States Constitution, and seeking damages for acts unconstitutional and conduct by the governmental actors identified herein and for their cause of action state and allege as follows:

**Introduction**

Plaintiffs seek declaratory judgment, and preliminary and permanent injunctive relief to compel Defendants to place Schmitz on the November 2019 ballot for Mayor of Indianapolis, to compel compliance with Section 8 of the National Voter Registration Act of 1993 ("NVRA") 52 U.S.C. § 20507, and to compel compliance with Section 2 of the Voting Rights Act of 1965 52 U.S.C. § 10301.  Relief in regard to all three (3) counts is pleaded in the alternative.

**Jurisdiction and Venue**

1) This case arises under the Constitution of the United States; this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the action arises under the laws of

the United States, and supplemental jurisdiction to hear claims under the Constitution of the United States and any applicable laws of the State of Indiana.

2) This action also is brought pursuant to 42 U.S.C. § 1983, providing for civil action for deprivation of civil rights by those acting under color or title of State law, 28 U.S.C. §§ 1362, 1331, 1343 (a)(3) and (4), 2201, and 2202, as well as Article III of the United States Constitution.

3) Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

4) Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because this action is predicated upon Federal questions and a substantial part of the events or omissions giving rise to the claims alleged herein occurred, and will continue to occur, in this District.

**Parties**

5) Plaintiff John Schmitz ("Schmitz") has sought placement on the November, 2019, ballot candidate for Mayor of Indianapolis.

6) Plaintiff, Anna Svec, is, and was at all times relevant herein, a citizen of the United States and the State of Indiana, a resident of the State of Indiana and of Marion County, and registered in Marion County to vote.

7) Plaintiff, Golda Bou is, and was at all times relevant herein, a citizen of the United States and the State of Indiana, a resident of the State of Indiana and of Marion County, and registered in Marion County to vote.

8) Plaintiff, Juan Ramos, is, and was at all times relevant herein, a citizen of the United States and the State of Indiana, a resident of the State of Indiana and of Marion County, and registered in Marion County to vote.

9) Defendant Marion County Election Board ("Board") is responsible for determination

of compliance of a candidate, who seeks placement on the ballot, through a petition for nomination. I.C. § 3-8-1-1.6.

10) Defendant Myla Elvidge is the Marion County Clerk and the chief election official in Marion County and responsible for oversight of elections.

11) Defendant Connie Lawson is the Indiana Secretary of State and the chief election official for the State of Indiana. I.C. § 3-6-4.2-2.

**Factual Background**

12) Plaintiff John Schmitz ("Schmitz") has sought placement on the November, 2019, ballot candidate for Mayor of Indianapolis, pursuant to I.C. § 3-8-6-1, *et seq.*, Indiana's statute for "Nomination by Petition for Independent or Minor Party Political Candidates."

13) I.C. § 3-8-6-2 provides:

"A candidate may be nominated for an elected office by petition of voters who are:
(1) registered to vote at the residence set forth on the petition on the date the county voter registration office certifies the petition under section 8 of this chapter; and
(2) qualified to vote for the candidate."

14) The number of signatures of voters required is "equal to two percent (2%) of the ttal vote cast at the last election for secretary of state in the electino district that the candidate seeks to represent" and in "determining the number of signatures required ... any fraction in excess of a whole number must be disregarded." I.C. § 3-8-6-3.

15) The number of voters' signatures Schmitz was required to obtain was Six Thousand One Hundred Six (6,106), as the Marion County Election Board affirmed at its meeting of July 30, 2019.

16) Schmitz submitted, on or before the July1, 2019, deadline, Eight Hundred Fifty-One

original sheets of the form petition, issued by the Office of the Secretary of State of Indiana, on which were a total, as noted by the Marion County Election Board on July 30, 2019, of Eight Thousand Two Hundred Ninety-Five (8,295) signatures.

17) Of those signatures, according to the Marion County Election Board One Thousand One Hundred Fifteen (1,115) were disallowed because the address listed by the voter on the form did not match the address the voter gave when the voter registered to vote.

18) The Board disallowed these signatures because I.C. § 3-8-6-6 states:

> "(a) The signatures to a petition of nomination need not be appended to one (1) paper, but a petitioner may not be cunted unless the petitioner is registered and qualified to vote in conformity with section 8 of this chapter. Each petition must contain the following:
> (1) The signature of each petitioner;
> (2) The name of each petitioner legibly printed.
> (3) The residence address of each petitioner as set forth on the petitioner's voter registration record..."

19) However, this lone part of the statute is in conflict with:

A) I.C. § 3-8-6-2: voters who sign the petition are "registered to vote at the residence set forth on the petition on the date the county voter registration office certifies the petition under section 8 of this chapter";

B) I.C. § 3-8-6-8:

> "For a petition of nomination to be considered valid by the officer required to receive the petition, the county voter registration office in the county where the petitioner is registered must certify that each petitioner is a voter at the residence address listed in the petition at the time the petition is being processed; and,

> C) The instructions on the "Petition of Nomination for City or Town Office in 2019" denominated as "State Form 49024 (R6/6-18" and notes "Indiana Election Division (IC 3-6-6-5; IC 3-6-6-10)" and states, in relevant part: "Each of the undersigned represents that: 1) the individual resides at the address after the individual's signature..."

4

20) The signatures of Sixty-five (65) voters were disallowed because the voter printed her or his name for both "signature" and printed name, the signatures of Sixty (60) voters were deemed illegible, and the signatures of One Hundred Sixty-four (164) had no address.

21) Among those voters whose signatures were disallowed were Plaintiffs Svec, Rou, and Ramos.

22) This left Schmitz Seven Hundred Forty-Nine (749) signatures short.

23) On July 15, 2019, Schmitz filed State Form CAN-1, "Candidates Filing Challenge."

24) On July 30, 2019, hearing was held by the Board to consider Schmitz's challenge.

25) After argument by Schmitz's counsel and counsel for Marion County Voter Registration, the Board:

    a) Agreed that Fifty-five (55) signatures were erroneously disallowed, Thirty-five should have been counted because the use of block print counted as a "signature," and five more signatures were under review;

    b) Acknowledged that all of the One Thousand One Hundred Fifteen (1,115) persons whose signatures were disallowed because each of those persons listed her or his address as her or his current address, and that address failed to match the address the person gave when the person registered to vote; and,

    c) Otherwise voted down Schmitz's challenge three (3) to nothing (0).

**Constitutional Bases for Plaintiffs' Complaint**

26) Voting enjoys constitutional protection. *Norman v. Reed*, 502 U.S. 279, 112 S.Ct. 698 (1992); *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 2063 (1992).

27) Voters have a fundamental right to associate politically and to vote for candidates of

their choice. *Schulz v. Williams*, 44 F.3d 48, 54-55 (2nd Cir. 1994).

28) The right to cast a vote and the right to have one's vote counted are both constitutionally protected. *United States v. Classic*, 313 U.S. 299, 315, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941).

29) A person's interest in participating in the political process through voting and having her or his vote counted is a right both 'individual and personal in nature.' *Reynolds v. Sims*, 377 U.S. 533, 561, 84 S.Ct. 1362 [12 L.Ed.2d 506] (1963)" as cited in *Griffin v. Burns*, 570 F.2d 1065, 1072 (1st Cir. 1978).

30) "And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the fee exercise of the franchise." *Reynolds*, 377 U.S. at 554.

31) "Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesbury v. Sanders*, 376 U.S. 1, 17, 84 S.Ct. 526, 535, 11 L.Ed.2d 481 (1964).

32) The Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections. A consistent line of decisions by this Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear. It has been repeatedly recognized that all qualified voters have a constitutionally recognized protected right to vote. *Reynolds v. Sims*, 377 U.S.533, 554, 84 S.Ct. 1362, 1377 (1964).

### Count 1: Violation of Constitutional Rights

33) Plaintiffs incorporate, by reference, as though ser forth fully herein, all preceding paragraphs of this Complaint.

34) Section 1 of the Fourteenth Amendment to the United States Constitution states: "No

... State shall ... deny to any person within its jurisdiction the equal protection of the law."

35) Defendants have no legitimate basis to have rejected or otherwise omitted the One Thousand One Hundred Fifteen (1,115) signatures of registered voters who signed the petition for the candidacy of John Schmitz.

36) These registered voters received unequal protection of the law in that the statute in question is unreasonably and unconstitutionally vague, contradictory, inherently can be interpreted in an arbitrary and capricious manner, and was so interpreted.

37) The statute could be interpreted in such a manner that any registered voter whose voter information has changed but whose legal status to vote in Marion County otherwise has been unchanged, could have her or his signature rejected or otherwise omitted for a petition for an independent candidate such as John Schmitz.

38) Plaintiffs' rights to vote, provide meaningful input to who appears on the ballot, and have their votes counted supersede the technicalities imposed by these statutes in that no one disputes these petitioners are registered voters and reside in Marion County.

39) No member of a "minor" political party was an elected representative in the Indiana House or Senate, or occupied the office of Governor when these statutes were promulgated and signed into law.

40) This violated Plaintiffs' rights of association and not to be coerced to associate, under the First Amendment to the United States Constitution as incorporated and extended to the States through the Fourteenth Amendment,

41) Plaintiffs were punished for attempting, or endorsing by petition the candidacy of a person who would attempt, to run for major political office - Mayor of Indianapolis - as a

candidate unaffiliated with any political party, but specifically either major political party.

42) "The granting of equitable relief premised directly upon the Constitution has long been a practice accepted without discussion. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 404, 91 S.Ct. 1999 (Harlan concurring, 1971)" as cited in *Donahue*, 435 F.Supp. at 963.

43) By engaging in the acts and/or omissions alleged herein, Defendants acted, and continue to act, under color or title of State law to deprive the Plaintiffs of their rights that are guaranteed and protected by the Fourteenth Amendment to the United States Constitution and the Voting Rights Act and will continue to violate said rights absent relief granted by this Court.

44) Plaintiffs have no other adequate remedy at law and ballots are scheduled to be set for printing on or about August 23, 2019, according to Plaintiffs' best information.

## Count 2: Violaton of NVRA

45) Plaintiffs incorporate, by reference, as though ser forth fully herein, all preceding paragraphs of this Complaint.

46) Defendants have failed to make reasonable voter list maintenance programs, in violation of section 8 of the NVRA, 52 U.S.C. §§ 20507 and 21083(a)(2)(A).

47) Defendants failed to update voter registration records, and in fact allowed outdated voter records under I.C. § 3-8-6-6(a)(3) to supersede more recent information, as that information became apparent from voters' information on the petitions as required by other sections of the statute, in violation of Federal law, when Plaintiffs Svec and Bou, and others similarly situated, had updated the address information on their Indiana drivers licenses, yet Defendants failed to update voter registration information to reflect these changes.

48) The Help Americans Vote Act ("HAVA") requires Indiana to maintain a centralized voter registration database, 52 U.S.C. § 21083(a)(1)(A)(i), into which local officials enter all voter registration information. 52 U.S.C. §21083(A)(1)(A)(vi).

49) Voter registration applicants with valid drivers licenses provide their license number on their application. 52 U.S.C. § 21083(a)(5)(A)(i).

50) The chief election official is required to compare information in the voter registration database with information in the Bureau of Motor Vehicles database "to the extent required ... to verify the accuracy of the information provided on applications for voter registration." 52 U.S.C. § 21083(a)(5)(B)(i).

51) Plaintiffs have suffered irreparable injury as a direct result of Defendants' violation of the NVRA, 52 U.S.C. §§ 20507 and 21083(a)(2)(A) by preventing Plaintiffs their rights to vote and participate in the election process by placing candidates of their choice, independent of any political party, on ballots.

### Count 3: Violation of Voting Rights Act of 1965

52) Plaintiffs incorporate, by reference, as though ser forth fully herein, all preceding paragraphs of this Complaint.

53) 52 U.S.C. § 10301, sec 2, provides: "No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color."

54) Protection of the right to vote also has been extended to the homeless.

55) Juan Ramos is Latino, homeless, but otherwise is a registered voter in Marion

County.

56) Plaintiff Juan Ramos has suffered irreparable injury as a direct result of Defendants' violation of 52 U.S.C. § 10301, by preventing Plaintiff his right to vote and participate in the election process by placing candidates of his choice, independent of any political party, on ballots, such prevention based on race, color, or homelessness.

**Prayer for Relief**

WHEREFORE, Plaintiffs respectfully request for a judgment:

A) Declaring Defendants' actions and/or the Indiana statutes in question are in violation of the First and Fourteenth Amendments to the United States Constitution.

B) Declaring the Defendants are in violation of Section 8 of the NVRA.

C) Declaring Defendants' acts or omissions are in conflict with section 2 of the Voting Rights Act of 1965.

D) Order Defendants to implement reasonable and effective registration list maintenance programs to cure failures to comply with Section 8 of the NVRA.

E) Grant Plaintiffs further relief that this Court deems proper, including preliminary injunctive relief to accept the One Thousand One Hundred Fifteen (1,115) voters' signatures that were rejected or otherwise omitted.

G) Order Plaintiff John Schmitz's name be placed on the November 2019, ballot for the Office of Mayor of Indianapolis.

H) Order Defendants to pay Plaintiffs' reasonable attorney's fees, including litigation and costs, pursuant to 42 U.S.C. § 1983, 52 U.S.C. § 20510c, and any other applicable provision in Federal law.

Date: August 6, 2019

Respectfully submitted,

/s Mark Small
Mark Small.
Attorney Number 14656-49
PO Box 20612
815 East 63rd Place, Suite 101
Indianapolis, Indiana 46220
Telephone: (317) 252-4800
E-mail: marksmall2001@yahoo.com

## Certificate of Service

I hereby certify that on the 6th day of August, 2019, I manually filed the foregoing Complaint and Request for Preliminary Injunction with the Clerk of the Court and served a copy personally upon the foregoing attorneys who have represented Defendants:

| Mindy Westrick | Curtis T. Hill, Jr. | Matthew Jeziorski |
|---|---|---|
| Faegre Baker Daniels | Indiana Attorney General | Corporate Counsel |
| Suite 2300 | 219 Statehouse | 1601 City-County Bldg |
| 300 North Meridian Street | 200 West Washington street | 200 E Washington St |
| Indianapolis IN 46204 | Indianapolis IN 46204 | Indianapolis IN 46204 |

/s Mark Small.
Mark Small.

11