**IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **JOHN M. SCHMITZ, ANNA SVEC,** | ) | |
| **GOLDA BOU, and JUAN RAMOS,** | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. |
| **v.** | ) | |
| | ) | |
| **MARION COUNTY BOARD OF** | ) | |
| **ELECTIONS, CONNIE LAWSON, and** | ) | |
| **MYLA ELDRIDGE,** | ) | |
| Defendants. | ) | |

PLAINTIFFS' COMBINED REPLY
IN SUPPORT OF EMERGENCY  PRELIMINARY INJUNCTION

### Introduction

Plaintiffs filed their Emergency Motion for Preliminary Injunction, with supporting documents, on August 12, 2019.  (Dkt. 10.)  Plaintiffs also filed a Memorandum of Law at that time.  (Dkt. 11.)  During telephonic status conference held on August 14, 2019, the parties agreed there was no need for discovery at this juncture.

Defendants Marion County Board of Elections and Marion County Clerk Myla Eldridge ("Marion County Defendants") filed their Response in Opposition to Plaintiffs' Emergency Motion for Preliminary Injunction, with supporting documents, on August 21, 2019.  (Dkt. 23.)

Defendant Secretary of State Connie Lawson ("Lawson") filed her Response in Opposition to Plaintiffs' Motion for Preliminary Injunction later in the evening of August 21. (Dkt. 24.)

Plaintiffs seek preliminary injunctive relief to compel Defendants to place John Schmitz

1

("Schmitz") on the November 2019 ballot for Mayor of Indianapolis.

There is no dispute the One Thousand One Hundred Fifteen (1,115) signatures excluded were those of registered voters legally qualified to sign Schmitz's petition.  Mr. Jerziorski, counsel for the Marion County Voters Registration stated at the July 30 hearing:

> "MR HOLLIS: For the 1,115 signatures that were registered at a different address, were all of those Marion County voters or were some of those out of county?
>
> MR. JERZIORSKI: We actually had two separate categories.  We had out of county category, which 117 people were not eligible, and then the other 1,115 were Marion County that did not match their address."

(Dkt. 23-4, pp. 26-27.)  Also, there is no dispute that these signatures bring Schmitz well over the tnumber of signatures he needs to be on the ballot.

**1.  The signatures of  One Thousand One Hundred Fifteen (1,115) voters actually were disallowed - unlike any cases cited by Defendants.**

In none of the cases cited by Defendants Marion County or Secretary of State were petition signatures of a candidate conceded by election authorities as being signatures of registered voters allowable other than for the address on the petition being at variance with the address on the voter's registration.  (See *Stone v. Bd of Election Commissioners of Chicago*, 750 F.3d 678, 680 (7th Cir. 2014), plaintiffs promptly sued to enjoin the 12,500–signature requirement; *Tripp v. Scholz*, 872 F.3d 857, 859-60 (7th Cir. 2017), candidate's actual number of signatures fell short); *Libertarian Party of Illinois v. Rednour*, 108 F.3d 768, 772-73 (7th Cir. 1997), plaintiffs challenged statutes that required percentage of voters signatures); *Emrit v. Lawson,* 2017 WL 4699279 (S.D.Ind. 2017), candidate for President never attempted to obtain signatures); *Nader v. Keith*, 385 F.3d 729, 734-35 (7th Cir. 2004), Court ofg Appeals cites state's history of voter fraud as reason for validation of voters' signatures); *Buckley v. American*

*Constitutional Law Foundation, Inc*., 525 U.S. 182, 191 (1999), considered requirements for

obtaining signatures for ballot initiative process); *Stevo v. Keith*, 546 F.3d 405 (7th Cir. 2008),

candidate had three thousand (3,000) actual signatures fewer than required).

Marion County Defendants cite  *Brazil-Breashears v. Bilandic*, 53 F.3d 789, 792-93 (7th

Cir. 1995) to support their contention: "Schmitz has no fundamental right to run for office."

(Dkt. 23, p. 4.)  The Seventh Circuit was not so curt in its assessment of rights in that case:

> However, to say that the right to candidacy is not fundamental is not to say that a rational
> basis analysis applies. In Citizens for John W. Moore, this court noted that decisions of
> the Supreme Court in the area of First Amendment rights suggest "that courts should
> avoid putting decisions in terms of a `standard of review.'" 845 F.2d at 1257. Defendants
> admit that "[w]hether such a policy violates the First Amendment has been traditionally
> dependent upon a balancing test between the individual's First Amendment rights and the
> interests of the public body." We agree. Nonetheless, we find that the rather minor
> restriction imposed on Brazil-Breashears does not unconstitutionally infringe on her First
> Amendment rights.. The State of Illinois has a substantial interest in maintaining the
> integrity of the judicial branch. The Policy serves this interest in that it enhances the
> efficiency of the workforce and prevents against actual, as well as the appearance of,
> impropriety. *Brazil-Breashears v. Bilandic*, 53 F.3d 789, 792 (7th Cir. 1995).

53 F.3d at 792.  Still, that case involved restrictions on State employees running for political

office, not disallowance of signatures of people acknowledged by State officials to be eligible to

sign a petition for candidacy.

While no such "fundamental" right to run for political office has been recognized so as

invoke a rigorous standard of review, the Court has examined rights in the context of a legal

challenge to the primary election filing fee system and determined that the level of judicial

scrutiny applicable varied with the extent of the restrictions' impact upon voting rights.  In

*Bullock v. Carter*, 405 U.S. 134, 143-44, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), the Court found

that the restrictions on political candidacy should be subjected to close scrutiny because they had

a strong impact on the exercise of the franchise.

Defendants, therefore, are precipitous to claim Plaintiffs "trip at this first hurdle." (Dkt. 23, p. 4.) First Amendment and Due process rights of voters to exercise the franchise are interwoven with their ability to vote for candidates, particularly where, as here, technicalities are used to disallow the signatures of those whom Defendants acknowledge are qualified.

**2. Any ambiguity should be construed against Defendants.**

Marion County Defendants address the State form issued to candidates, such as Schmitz, to gather signatures of voters, such as Svec, Bau, and Ramos, in somewhat confusing fashion.

The instructions on the "Petition of Nomination for City or Town Office in 2019" denominated as "State Form 49024 (R6/6-18" "Indiana Election Division (IC 3-6-6-5; IC 3-6-6-10)" state, in relevant part: "Each of the undersigned represents that: 1) the individual resides at the address after the individual's signature..." (Dkt. 23 at p. 8, citing to Prelim Inj. Mot. Ex. 1, Dkt. 10-1.)

Marion County Defendants then conclude "the form is consistent with the Registered Address Requirement statutes; individuals must register at the address they reside and place that address on the CAN-44 form." (Dkt. 23, p. 8.) The form says no such thing. The statement on the form is direct. The "individual" is the person signing the petition. The word "reside" is an intransitive verb and means "to dwell permanently or for a considerable time." *Random House Webster's Unabridged Dictionary*, 2d ed., 2001, p. 1638. The word "address" in this context means "the place or name of the place where a person, organization or the like can be reached." *Id*., p. 23.

Perhaps it would be helpful to the voter about to sign this State-issued form to know that

4

I.C. § 3-7-39-1 requires the person send a "transfer of registration on a prescribed form to the circuit court clerk or board of registration," (Dkt. 23, p. 8.)  Of course, the form makes no such mention.  While there are statutes cited on the form, they are not the admonition to provide change of address cited by Marion County Defendants.  Apparently, from the viewpoint of the Marion County Defendants, since this is as the voters should have done, then that is the address the voters know to list.  If the voter lists a different address, then, apparently in the view of Defendants, that signature should be disallowed.

The Supreme Court has held that "[i]t is no less good morals and good law that the Government should turn square corners in dealing with the people than that the people should turn square corners in dealing with their government." *Heckler v. Community Health Services of Crawford County, Inc*, 467 U.S. 51, 61 n. 13, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984).  Voters and candidates, such as the Plaintiffs here, relied upon instructions on a form issued by the State.  The terms should not be construed against those other than the authors.  More than ten percent (10%) of voters move every year.  *Husted v. A. Philip Randolph Inst*., 138 S. Ct. 1833, 1839 (2018).  Defendants should have known to make the instructions more clear.

**I.   There is a substantial likelihood that Plaintiffs will succeed on the merits.**

To prevail on a motion for a preliminary injunction, Plaintiffs must show: (1) a substantial likelihood that they will succeed on the merits; (2) that no adequate remedy at law exists; and (3)  the preliminary injunction is necessary to prevent irreparable injury.  *TY, Inc. v. Jones Group, Inc*., 237 F.3d 891, 895 (7th Cir. 2001).  If the court is satisfied that these three conditions have been met, then it must consider the irreparable harm the nonmoving party will

5

suffer if relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id*. Finally, the court must consider the public interest in denying or granting the injunction. *Id*. The court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Abbott Labs v. Mead Johnson Co*., 971 F.2d 6, 12 (7th Cir. 1992).

Plaintiffs in a case such as this "must, at a minimum, show a "'better than negligible' chance of success on the merits of at least one of [their] claims." *Common Cause Of Indiana v. Marion County Board of Elections*, 311 F.Supp.3d 949, 961 (S.D.Ind. 2018).

One Thousand One Hundred Fifteen (1,115) voters had their signatures disallowed - by means of officials checking voter registration records, comparing those records against the CAN-44 Form signatures and addresses, and determining, in these voters' cases, they were legally registered to vote and registered in Marion County. Brienne Delaney, Director of Elections for the Marion County Election Board, states in her Declaration, in relevant part:

> "8. If a petitioner does not provide on the CAN-44 the address at which he or she is registered to vote, Voter Registration has no means of verifying that the petitioner is a registered voter who is qualified to vote for the Prospective Independent Candidate.
> 9. Prospective Independent Candidates must collect the required signatures from the petitioners on the CAN-44 form and submit those forms to Voter Registration, which then reviews each petitioner's information and certifies them to be counted toward the minimum number of signatures. *See* Ind. Code §§ 3-8-6-6, -8. ...
> 14. Of the signatures that were not certified, 1,115 were not certified because the address the petitioner provided on the CAN-44 form was different than the address at which the petitioner was registered to vote. These signatures, therefore, did not satisfy the Registered-Address Requirement."

(Decl. Brienne Delaney, Dkt. 23-1, p. 3.) In fact, contrary to the statement in paragraph 8 of the declaration, there were means by which Voter Registration could verify that the petitioner is a registered voter. On CAN-44 each petitioner lists her or his date of birth. (Dkt. 10-1.) There

6

was some way in which a determination was made, as stated in paragraph 14, that these signatures were not certified specifically "because the address the petitioner provided on the CAN-44 form was different than the address at which the petitioner was registered to vote."

**A.  The statutes are ambiguous and in conflict.**

An ambiguity is "[d]oubtfulness or uncertainty of meaning or intention, as in a contractual term or statutory provision; indistinctness of signification, esp. by reason of doubleness of interpretation." *Black's Law Dictionary*, 10th ed., 2014, p.97.

Marion County Defendants contend there is no ambiguity in the statutes at issue. However, I.C. § 3-8-6-2 provides:

> "A candidate may be nominated for an elected office by petition of voters who are:
>
>> (1) registered to vote at the residence set forth on the petition on the date the county voter registration office certifies the petition under section 8 of this chapter; and
>> (2) qualified to vote for the candidate."

There are several qualifiers in sub-paragraph (1).  First, and foremost, the voter who signs the petition is "registered to vote."  The next qualifier is "at the residence."  If a voter is unfamiliar with the procedures or uncertain about specifics, CAN-44 also states:

> "Petitioners are not required to provide precinct/ward information.  The county voter registration office will complete this information after the petition is filed...."

(Dkt. 10-1.)  If there is any uncertainty, the voter who signs need not worry.  The county voter registration office will complete this information after the petition is filed.  There is no qualifier as to one's residence:

> "Each of the undersigned represents that:  1) the individual resides at the address after the individual's signature; 2) the individual is a duly qualified registered voter in Indiana; and 3) the individual desires to be able to vote for the candidates listed below ..."

7

(Dkt. 10-1.)  Here the person must aver that she or he resides at the residence next to her or his signature - not the address at which she or he resided when she or he registered to vote.

I.C. § 3-8-6-8 requires, in relevant part, that "the county voter registration office in the county where the petitioner is registered must certify that each petitioner is a voter at the residence address listed in the petition at the time the petition is being processed."  This makes no mention of an address listed on the voter registration form.  Defendants cannot add words to the statute to make the statute less contradictory.

**B.  These ambiguous statutes are arbitrary, capricious and violate Plaintiffs' rights.**

As Plaintiffs note earlier in this Reply, the cases cited by Defendants in support of their argument as to voting and the rights of Plaintiffs here are not dispositive.

Voting enjoys constitutional protection.  *Norman v. Reed*, 502 U.S. 279, 112 S.Ct. 698 (1992); *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 2063 (1992).  Voters have a fundamental right to associate politically and to vote for candidates of their choice.  *Schulz v. Williams*, 44 F.3d 48, 54-55 (2nd Cir. 1994).  The right to cast a vote and the right to have one's vote counted are both constitutionally protected.  *United States v. Classic*, 313 U.S. 299, 315, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941).

Marion County Defendants' citation to *Acevedo v. Cook County Officers Electoral Bd.,* 925 F.3d 944, 948 (7th Cir. 2019), is of little relevance.  There the plaintiff sued because of the imposition of a requirement he provide a specific number of signatures.  Likewise, the five (5) plaintiffs in *Navarro v. Neal*, 925 F.3d 946 (7th Cir. 2019) who sought to be on the general election ballot after deadlines had passed and without sufficient signatures, are not similar to Plaintiff s this case.  If the reason for the statutes is to ensure that only registered voters who are

8

qualified have signed the petition, then Defendants have acknowledged the One Thousand One Hundred Fifteen (1,115) voters whose signatures were excluded met the test: their voter status was validated.  To exclude those voters now is punitive.  The only State interest that is further, legitimately, by the statutes is negated by the exclusion of these voters' signatures.  Plaintiffs in a case such as this "must, at a minimum, show a "'better than negligible' chance of success on the merits of at least one of [their] claims." *Common Cause Of Indiana v. Marion County Board of Elections*, 311 F.Supp.3d 949, 961 (S.D.Ind. 2018).  These Plaintiffs have.

Defendants have lost sight of the principle that each provision of election law "whether it governs the registration and qualification of voters, the selection and eligibility of candidates, or the voting process itself, inevitable affects - at least to some degree - the individual's right to vote and his right to associate with others for political ends." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).  When a State imposes a severe burden, strict scrutiny applies and any burdensome action must be narrowly tailored to advance a compelling State interest.  *Id.*  Even where the burden is not "severe" enough to warrant strict scrutiny, courts weighing the burden on voters against the State's interest will look to the "precision" with which the State's interests are advanced by the burdensome regulation.  *Burdick*, 504 U.S. at 434.

**C.  Short shrift is given to the irreparable harm Plaintiffs will suffer.**

A burden on a group of voters imposed solely in virtue of the political beliefs and affiliations of a majority of the group's members by its nature impinges on freedoms protected by the First Amendment, inviting a searching standard of review.  *Common Cause*, 311 F.Supp.3d at 970.  "A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First

Amendment." *Anderson*, 460 U.S. at 793.

Plaintiffs seek relief that is finite: inclusion on the ballot for the November election. State Defendant asserts Plantiffs "have an adequate remedy at law in the form of a judicial review, so injunctive relief is inappropriate." (Dkt. 24, p. 3.)

## III. The preliminary relief is narrowly tailored.

The potential for imposition of hardship on Defendants in the remedy Plaintiffs seek in this preliminary matter is negligible. Defendants need only allow the One Thousand One Hundred Fifteen (1,115) signatures disallowed to now be counted. By allowing these One Thousand One Hundred Fifteen (1,115) signatures to be counted, Defendants need only ensure that one name, that John Schmitz, is added to the November, 2019, ballot for Mayor of Indianapolis.

## IV. Plaintiffs will suffer irreparable harm absent the requested relief.

A burden on a group of voters imposed solely in virtue of the political beliefs and affiliations of a majority of the group's members by its nature impinges on freedoms protected by the First Amendment, inviting a searching standard of review. *Common Cause*, 311 F.Supp.3d at 970. "A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment." *Anderson*, 460 U.S. at 793.

Schmitz seeks to be included on the 2019 ballot. Plaintiff voters believe he should be included on this November's ballot. There is no credible reason to preclude Schmitz from the ballot. The 2019 municipal election will be held only once. The harm to Plaintiffs  is irreparable. This addresses State Defendant's assertion that Plantiffs have an adequate remedy at

law - judicial review.  (Dkt. 24, p. 14.)  However, the cases cited by Defendant are not cases

involving elections.  *Scales v. Hosp. House of Bedford*, 593 N.E.2d 1283, 1286 (Ind.Ct.App.

1992), had to do with Medicaid reimbursements.  In *Wisconsin Cent. Ltd. v. Pub. Serv. Comm'n

of Wisconsin*, 95 F.3d 1359, 1370 (7th Cir. 1996), plaintiff railroads had, as a remedy, payment of

compensation.  Here, it is suggested judicial review of the board's decision may be pursued.  To

suggest judicial review is an adequate remedy, and cite as authority cases that involve payment of

monetary damages, ignores the harm to these specific Plaintiffs.

## V.  Defendants will not be harmed by the requested relief.

If the relief is granted, Defendants need only include Schmitz on the November ballot.  It

appears "that a constitutionally 'capricious or irrelevant factor'" provided the only justification

for the Board's disallowance of the signatures for the petition to include Schmitz on the ballot.

See *Common cause*, 311 F.Supp.3d at 970.

However, Marion County Defendants claim that they will "be severely prejudiced by the

injunctive relief Plaintiffs seek."  (Dkt. 23 at p. 18.)  If the relief is granted, however, Schmitz

will be on the ballot.  Ms. Delaney appears to place the cost of the entire ballot process on

Plaintiffs.  (Dkt 23, p. 19; citing to Delaney Decl., ¶ 26.)  This is a figure based upon the total

cost of elections from September 9.  (Dkt. 23, p. 19.)

## VI.  The Public interest weighs heavily in favor of granting the requested relief.

A person's interest in participating in the political process through voting and having her

or his vote counted is a right both 'individual and personal in nature.' *Reynolds*, 377 U.S. at 561;

as cited in *Griffin v. Burns*, 570 F.2d 1065, 1072 (1st Cir. 1978).  These voters' signatures should

be allowed and Schmitz be allowed on the ballot because freedom of choice is essential in our system.

Marion County Defendants express concern about "harm to the properly placed candidates and voters" that would be irreparable. (Dkt. 23 at p. 18.) What is more glaring as a concern is a governmental board with jurisdiction over elections that would seek a bond the effect of which would chill efforts at seeking protection from our courts for violation of rights.

F.R.Civ.P. 65(c) provides:

"...The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

The adequacy of a preliminary injunction bond is within the sound discretion of the court. *Gateway Eastern Railway Co. v. Terminal Railroad Association of St. Louis*, 35 F.3d 1134, 1141 (7th Cir. 1994).

Marion County Defendants seek bond in the amount of One Hundred Thousand Dollars ($100,000.00), based upon Ms. Delaney's declaration. (Dkt 23, p. 19; citing to Delaney Decl., ¶ 26.) This is a figure based upon the total cost of elections from September 9. (Dkt. 23, p. 19.)

First, to set a bond in such an amount would have a chilling effect on people who seek to run for office outside the hierarchy of the two "major political parties."

Second, there is no delineation of what part of the costs of One Hundred Thousand Dollars ($100,000.00) insertion of Schmitz's name on the ballot would cost.

Finally, to set a bond in such an amount, in regard to an election challenge, is the equivalent of a poll tax.  "We conclude that a State violates the Equal Protection Clause of the Fourteenth Amendment whenever it makes the affluence of the voter or payment of any fee an electoral standard. Voter qualifications have no relation to wealth nor to paying or not paying this or any other tax. " *Harper v. Virginia Board of Elections*, 383 U.S. 663, 666 (1966).  Poll taxes are prohibited in Federal elections.  U.S. Const. Amend. XXIV, sec. 1.

This court has, within its discretion, to set a bond in a nominal amount.  Given this is a challenge to defend the right to access to the ballot and the right to vote, any bond should be nominal.  Also, the extent of the concern of the Marion County Board of Elections for the public might not be readily apparent to members of the public, particularly when members of the public are not allowed to speak at a public hearing.  (Dkt. 23-4, pp. 33-34.).

**CONCLUSION**

WHEREFORE, Plaintiffs respectfully request the Court grant preliminary injunctive relief for the 2019 November municipal election for Mayor of the City of Indianapolis to allow all of the One Thousand One Hundred Fifteen (1,115) signatures, including those of Plaintiff voters, to be counted for purposes of the petitions submitted by Plaintiff Schmitz on July 1, 2019, and to require Defendants to list John Schmitz as a candidate for Mayor of Indianapolis on the

13

November, 2019, ballot.

Date: August 12, 2019                    Respectfully submitted,


                            /s Mark Small._____
                            Mark Small.
                            Attorney Number 14656-49
                            PO Box 20612
                            815 East 63rd Place, Suite 101
                            Indianapolis, Indiana 46220
                            Telephone: (317) 252-4800
                            E-mail: marksmall2001@yahoo.com

                    **Certificate of Service**

       I hereby certify that on the 12th day of August, 2019, a copy of the foregoing Emergency
Motion for a Preliminary Injunction was served upon all counsel of record through the EM/ECF
electronic filing system.
                            /s Mark Small._____
                            Mark Small.


**1.  Any bond should be nominal under F.R. Civ.P. 65(C).**




challenge decisions relative to elections    and can be for a nominal amount under appropriate
circumstances.  to compel compliance with Section 8 of the National Voter Registration Act of
1993 ("NVRA") 52 U.S.C. § 20507, and to compel compliance with Section 2 of the Voting
Rights Act of 1965 52 U.S.C. § 10301.  Relief in regard to all three (3) counts is pleaded in the
alternative.

Among the supporting documents is Declaration of Brienne Delaney who is Director of Elections
for the Marion County Election Board.  (Dkt. 23-1, para. 1.)    documents
                    **Jurisdiction and Venue**
       1) This case arises under the Constitution of the United States; this Court has original

jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the action arises under the laws of the United States, and supplemental jurisdiction to hear claims under the Constitution of the United States and any applicable laws of the State of Indiana.

2) This action also is brought pursuant to 42 U.S.C. § 1983, providing for civil action for deprivation of civil rights by those acting under color or title of State law, 28 U.S.C. §§ 1362, 1331, 1343 (a)(3) and (4), 2201, and 2202, as well as Article III of the United States Constitution.

3) Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

4) Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because this action is predicated upon Federal questions and a substantial part of the events or omissions giving rise to the claims alleged herein occurred, and will continue to occur, in this District.

**Parties**

5) Plaintiff John Schmitz ("Schmitz") has sought placement on the November, 2019, ballot candidate for Mayor of Indianapolis.

6) Plaintiff, Anna Svec, is, and was at all times relevant herein, a citizen of the United States and the State of Indiana, a resident of the State of Indiana and of Marion County, and registered in Marion County to vote.

7) Plaintiff, Golda Bou is, and was at all times relevant herein, a citizen of the United States and the State of Indiana, a resident of the State of Indiana and of Marion County, and registered in Marion County to vote.

8) Plaintiff, Juan Ramos, is, and was at all times relevant herein, a citizen of the United States and the State of Indiana, a resident of the State of Indiana and of Marion County, and registered in Marion County to vote.

12) Plaintiff John Schmitz ("Schmitz") has sought placement on the November, 2019, ballot candidate for Mayor of Indianapolis, pursuant to I.C. § 3-8-6-1, *et seq*., Indiana's statute for "Nomination by Petition for Independent or Minor Party Political Candidates."

14) The number of signatures of voters required is "equal to two percent (2%) of the ttal vote cast at the last election for secretary of state in the electino district that the candidate seeks to represent" and in "determining the number of signatures required ... any fraction in excess of a whole number must be disregarded." I.C. § 3-8-6-3.

15) The number of voters' signatures Schmitz was required to obtain was Six Thousand One Hundred Six (6,106), as the Marion County Election Board affirmed at its meeting of July 30, 2019.

16) Schmitz submitted, on or before the July1, 2019, deadline, Eight Hundred Fifty-One original sheets of the form petition, issued by the Office of the Secretary of State of Indiana, on which were a total, as noted by the Marion County Election Board on July 30, 2019, of Eight Thousand Two Hundred Ninety-Five (8,295) signatures.

17) Of those signatures, according to the Marion County Election Board One Thousand One Hundred Fifteen (1,115) were disallowed because the address listed by the voter on the form did not match the address the voter gave when the voter registered to vote.

18) The Board disallowed these signatures because I.C. § 3-8-6-6 states:

"(a) The signatures to a petition of nomination need not be appended to one (1) paper, but a petitioner may not be cunted unless the petitioner is registered and

qualified to vote in conformity with section 8 of this chapter.  Each petition must
contain the following:

> (1) The signature of each petitioner;
> (2) The name of each petitioner legibly printed.
> (3) The residence address of each petitioner as set forth on the petitioner's
> voter registration record..."

19) However, this lone part of the statute is in conflict with:

A) I.C. § 3-8-6-2:  voters who sign the petition are "registered to vote at the
residence set forth on the petition on the date the county voter registration office certifies the
petition under section 8 of this chapter";

and,

C) The instructions on the "Petition of Nomination for City or Town Office in
2019" denominated as "State Form 49024 (R6/6-18" and notes "Indiana Election
Division (IC 3-6-6-5; IC 3-6-6-10)" and states, in relevant part: "Each of the
undersigned represents that: 1) the individual resides at the address after the
individual's signature..."

20) The signatures of Sixty-five (65) voters were disallowed because the voter printed her
or his name for both "signature" and printed name, the signatures of Sixty (60) voters were
deemed illegible, and the signatures of One Hundred Sixty-four (164) had no address.

21) Among those voters whose signatures were disallowed were Plaintiffs Svec, Rou, and
Ramos.

22) This left Schmitz Seven Hundred Forty-Nine (749) signatures short.

23) On July 15, 2019, Schmitz filed State Form CAN-1, "Candidates Filing Challenge."

24) On July 30, 2019, hearing was held by the Board to consider Schmitz's challenge.

25) After argument by Schmitz's counsel and counsel for Marion County Voter
Registration, the Board:

a) Agreed that Fifty-five (55) signatures were erroneously disallowed, Thirty-five
should have been counted because the use of block print counted as a "signature," and five more
signatures were under review;

b) Acknowledged that all of the One Thousand One Hundred Fifteen (1,115)
persons whose signatures were disallowed because each of those persons listed her or his address
as her or his current address, and that address failed to match the address the person gave when
the person registered to vote; and,

c)  Otherwise voted down Schmitz's challenge three (3) to nothing (0).

### Constitutional Bases for Plaintiffs' Complaint

26)  Voting enjoys constitutional protection.  *Norman v. Reed*, 502 U.S. 279, 112 S.Ct.
698 (1992); *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 2063 (1992).

27) Voters have a fundamental right to associate politically and to vote for candidates of
their choice.  *Schulz v. Williams*, 44 F.3d 48, 54-55 (2nd Cir. 1994).

28)  The right to cast a vote and the right to have one's vote counted are both

constitutionally protected.  *United States v. Classic*, 313 U.S. 299, 315, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941).

29)  A person's interest in participating in the political process through voting and having her or his vote counted is a right both 'individual and personal in nature.' *Reynolds v. Sims*, 377 U.S. 533, 561, 84 S.Ct. 1362 [12 L.Ed.2d 506] (1963)" as cited in *Griffin v. Burns*, 570 F.2d 1065, 1072 (1ˢᵗ Cir. 1978).

30)  "And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the fee exercise of the franchise." *Reynolds*, 377 U.S. at 554.

31)  "Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesbury v. Sanders*, 376 U.S. 1, 17, 84 S.Ct. 526, 535, 11 L.Ed.2d 481 (1964).

32)  The Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections. A consistent line of decisions by this Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear. It has been repeatedly recognized that all qualified voters have a constitutionally recognized protected right to vote.  *Reynolds v. Sims,* 377 U.S.533, 554, 84 S.Ct. 1362, 1377 (1964).

## Count 1: Violation of Constitutional Rights

33) Plaintiffs incorporate, by reference, as though ser forth fully herein, all preceding paragraphs of this Complaint.

34)  Section 1 of the Fourteenth Amendment to the United States Constitution states: "No ... State shall ... deny to any person within its jurisdiction the equal protection of the law."

35)  Defendants have no legitimate basis to have rejected or otherwise omitted the One Thousand One Hundred Fifteen (1,115) signatures of registered voters who signed the petition for the candidacy of John Schmitz.

36) These registered voters received unequal protection of the law in that the statute in question is unreasonably and unconstitutionally vague, contradictory, inherently can be interpreted in an arbitrary and capricious manner, and was so interpreted.

37) The statute could be interpreted in such a manner that any registered voter whose voter information has changed but whose legal status to vote in Marion County otherwise has been unchanged, could have her or his signature rejected or otherwise omitted for a petition for an independent candidate such as John Schmitz.

38) Plaintiffs' rights to vote, provide meaningful input to who appears on the ballot, and have their votes counted supersede the technicalities imposed by these statutes in that no one disputes these petitioners are registered voters and reside in Marion County.

39) No member of a "minor" political party was an elected representative in the Indiana House or Senate, or occupied the office of Governor when these statutes were promulgated and signed into law.

40) This violated Plaintiffs' rights of association and not to be coerced to associate, under the First Amendment to the United States Constitution as incorporated and extended to the States through the Fourteenth Amendment,

41) Plaintiffs were punished for attempting, or endorsing by petition the candidacy of  a person who would attempt, to run for major political office - Mayor of Indianapolis - as a candidate unaffiliated with any political party, but specifically either major political party.

42)  "The granting of equitable relief premised directly upon the Constitution has long been a practice accepted without discussion. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 404, 91 S.Ct. 1999 (Harlan concurring, 1971)" as cited in *Donahue*, 435 F.Supp. at 963.

43) By engaging in the acts and/or omissions alleged herein, Defendants acted, and continue to act, under color or title of State law to deprive the Plaintiffs of their rights that are guaranteed and protected by the Fourteenth Amendment to the United States Constitution and the Voting Rights Act and will continue to violate said rights absent relief granted by this Court.

44) Plaintiffs have no other adequate remedy at law and ballots are scheduled to be set for printing on or about August 23, 2019, according to Plaintiffs' best information.

**Count 2: Violaton of NVRA**

45) Plaintiffs incorporate, by reference, as though ser forth fully herein, all preceding paragraphs of this Complaint.

46) Defendants have failed to make reasonable voter list maintenance programs, in violation of section 8 of the NVRA, 52 U.S.C. §§ 20507 and 21083(a)(2)(A).

47) Defendants failed to update voter registration records, and in fact allowed outdated voter records under I.C. § 3-8-6-6(a)(3) to supersede more recent information, as that information became apparent from voters' information on the petitions as required by other sections of the statute, in violation of Federal law, when Plaintiffs Svec and Bou, and others similarly situated, had updated the address information on their Indiana drivers licenses, yet Defendants failed to update voter registration information to reflect these changes.

48) The Help Americans Vote Act ("HAVA") requires Indiana to maintain a centralized voter registration database, 52 U.S.C. § 21083(a)(1)(A)(i), into which local officials enter all voter registration information.  52 U.S.C. §21083(A)(1)(A)(vi).

49) Voter registration applicants with valid drivers licenses provide their license number on their application.  52 U.S.C. § 21083(a)(5)(A)(i).

50) The chief election official is required to compare information in the voter registration database with information in the Bureau of Motor Vehicles database "to the extent required ... to verify the accuracy of the information provided on applications for voter registration."  52 U.S.C. § 21083(a)(5)(B)(i).

51) Plaintiffs have suffered irreparable injury as a direct result of Defendants' violation of the NVRA, 52 U.S.C. §§ 20507 and 21083(a)(2)(A) by preventing Plaintiffs their rights to vote and participate in the election process by placing candidates of their choice, independent of any political party, on ballots.

**Count 3: Violation of Voting Rights Act of 1965**

52) Plaintiffs incorporate, by reference, as though ser forth fully herein, all preceding paragraphs of this Complaint.

53) 52 U.S.C. § 10301, sec 2, provides: "No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color."

54) Protection of the right to vote also has been extended to the homeless.

55) Juan Ramos is Latino, homeless, but otherwise is a registered voter in Marion

County.

56)  Plaintiff Juan Ramos has suffered irreparable injury as a direct result of Defendants' violation of  52 U.S.C. § 10301, by preventing Plaintiff his right to vote and participate in the election process by placing candidates of his choice, independent of any political party, on ballots, such prevention based on race, color, or homelessness.

**Prayer for Relief**

WHEREFORE, Plaintiffs respectfully request for a judgment:

A) Declaring Defendants' actions and/or the Indiana statutes in question are in violation of the First and Fourteenth Amendments to the United States Constitution.

B) Declaring the Defendants are in violation of Section 8 of the NVRA.

C) Declaring Defendants' acts or omissions are in conflict with section 2 of the Voting Rights Act of 1965.

D) Order Defendants to implement reasonable and effective registration list maintenance programs to cure failures to comply with Section 8 of the NVRA.

E) Grant Plaintiffs further relief that this Court deems proper, including preliminary injunctive relief to accept the One Thousand One Hundred Fifteen (1,115) voters' signatures that were rejected or otherwise omitted.

G) Order Plaintiff John Schmitz's name be placed on the November 2019, ballot for the Office of Mayor of Indianapolis.

H) Order Defendants to pay Plaintiffs' reasonable attorney's fees, including litigation and costs, pursuant to 42 U.S.C. § 1983, 52 U.S.C. § 20510c, and any other applicable provision in Federal law.

Date: August 6, 2019               Respectfully submitted,


                                    /s Mark Small.
                                   Mark Small.
                                   Attorney Number 14656-49
                                   PO Box 20612
                                   815 East 63rd Place, Suite 101
                                   Indianapolis, Indiana 46220
                                   Telephone: (317) 252-4800
                                   E-mail: marksmall2001@yahoo.com


**Certificate of Service**

I hereby certify that on the 6th day of August, 2019, I manually filed the foregoing

Complaint and Request for Preliminary Injunction with the Clerk of the Court and served a copy

personally upon the foregoing attorneys who have represented Defendants:

| Mindy Westrick | Curtis T. Hill, Jr. | Matthew Jeziorski |
| Faegre Baker Daniels | Indiana Attorney General | Corporate Counsel |

19

Suite 2300                  219 Statehouse           1601 City-County Bldg
300 North Meridian Street   200 West Washington street  200 E Washington St
Indianapolis IN 46204       Indianapolis IN 46204     Indianapolis IN 46204


    /s Mark Small._____
Mark Small.