UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN M. SCHMITZ, ANNA SVEC, GOLDA BOU, and JUAN RAMOS, <br><br> Plaintiffs, <br><br> v. <br><br> MARION COUNTY BOARD OF ELECTIONS, CONNIE LAWSON, and MYLA ELDRIDGE, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 1:19-cv-03314-TWP-MPB |

**ENTRY DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

This matter is before the Court on an Emergency Motion for a Preliminary Injunction filed by Plaintiffs John M. Schmitz ("Schmitz"), Anna Svec, Golda Bau, and Juan Ramos (collectively "Plaintiffs"). (Filing No. 10.) Schmitz hopes to be listed on the ballot in the November 2019 municipal election for the office of Mayor of Indianapolis, Indiana. A decision by Defendant Marion County Board of Elections (the "Board") to disallow over 1,000 signatures on Schmitz's petitions put him below the threshold number of signatures required to be listed on the November 2019 election ballot. The Plaintiffs then brought this suit against Defendants the Board, Connie Lawson, Indiana's Secretary of State ("Lawson"), and Myla Eldridge, the Marion County Clerk ("Eldridge"), alleging violations of Plaintiffs' First and Fourteenth Amendment rights, the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507, and the Voting Rights Act of 1965, 52 U.S.C. § 10301. (Filing No. 1.) In hopes of getting Schmitz's name on the ballot before the November 2019 election, Plaintiffs moved for a preliminary injunction on only their First and Fourteenth Amendment Claims. (Filing No. 10.) For the reasons stated below, Plaintiffs' Motion for a Preliminary Injunction must be **denied**.

## I. BACKGROUND

To appear on the ballot for elected office, an independent candidate may be nominated by petition of registered voters "equal to two percent (2%) of the total vote cast in the last election for secretary of state in the election district that the candidate seeks to represent." Indiana Code § 3-8-6-3. The actual form a candidate uses, titled "Petition of Nomination for City or Town Office in 2019," is often called a "CAN-44" form. (Filing No. 10-1.) The voters who sign the petition must be "registered to vote at the address set forth on the petition on the date the county voter registration office certifies the petition under section 8 of this chapter; and qualified to vote for the candidate." I.C. § 3-8-6-2. For simplicity's sake, this Entry will refer to the idea that a voter who signs a CAN-44 form must list the address at which he or she is registered to vote as the "Registered-Address Requirement."

Two other chapters of Indiana Code § 3-8-6 mention the address component of the petition. Indiana Code § 3-8-6-6(a)(3) reiterates that each petition must contain "[t]he residence address of each petitioner **as set forth on the petitioner's voter registration record**." (Emphasis added). "For a petition of nomination to be considered valid by the officer required to receive the petition, the county voter registration office in the county where the petitioner is registered must certify that each petitioner is a voter at the **residence address** listed in the petition at the time the petition is being processed." *Id*. at § 3-8-6-8 (emphasis added).

The CAN-44 form itself does not mention the Registered-Address Requirement at all. (Filing No. 10-1.) The "INSTRUCTIONS" field of the document says "[p]etitioners are not required to provide precinct/ward information. The county voter registration office will complete this information after the petition is filed." *Id.* The document also explains, "[e]ach of the undersigned represents that: 1) the **individual resides at the address listed after the individual's**

2

**signature**; 2) the individual is a duly qualified registered voter in Indiana; and 3) the individual desires to be able to vote for the candidates listed below…." *Id.* (emphasis added). The petition portion of the CAN-44 form asks signers to list their "RESIDENCE ADDRESS (No P.O. Boxes)." *Id.* The form specifically lists two sections of Indiana Code Chapter 3-8-6, but it does not list section 2, which contains the Registered-Address Requirement.[1] *Id.*

To be named on the ballot in the 2019 municipal election, Schmitz had to file a petition with a number of signatures equal to or greater than 2% of the total vote cast in the last election for Secretary of State in Indianapolis. Before the July 1, 2019 deadline, Schmitz submitted petitions with 8,295 signatures. (Filing No. 1 at 3-4.) Schmitz submitted his first two batches totaling 5,073 signatures to Voter Registration on June 3, 2019 and June 18, 2019. (Filing No. 23-5 at 3.) Voter Registration certified 3,353 of those signatures on June 21, 2019. Schmitz submitted a third batch of 798 signatures on June 25, 2019 and Voter Registration certified 490 of these signatures the next day, on June 26, 2019. *Id.* Schmitz submitted his fourth batch of 614 signatures on June 27, 2019 and Voter Registration certified 395 of these signatures the July 1, 2019. *Id.* Schmitz submitted a final batch of 1,810 signatures on July 1, 2019 and Voter Registration certified 1,118 of those signatures on July 9, 2019. *Id.* In total, the Board disallowed 1,115 signators because the addresses listed by those voters on the forms did not match the voters' registration addresses. *Id.* at 4. The Board also disallowed 65 signatures because the voters printed his or her name in both the "signature" and "printed name" fields; it disallowed 60 signatures because the voters were deemed ineligible; and it disallowed 164 signatures because no address was provided. According to Schmitz, this left him 749 signatures short of the number he needed to get his name on the ballot for the 2019 mayoral race. *Id.* at 5.

---

[1] The CAN-44 cites I.C. § 3-8-6-5, which states what information the petition must include about the prospective candidate, and I.C. § 3-8-6-10, which details the candidate's deadlines for filing the petition. (Filing No. 10-1.)

3

Schmitz challenged the Board's rulings and the Board held a hearing on that challenge on July 30, 2019. *Id.* After argument by Schmitz's counsel, the Board determined that 55 signatures were erroneously disallowed because the writing in the "signature" field counted as a signature. *Id.* It also placed five more signatures under review. *Id.* But it denied Schmitz's address challenge and affirmed the decision to disallow the 1,115 signatures that did not satisfy the Registered-Address Requirement. *Id.* On August 6, 2019, Plaintiffs filed a complaint in this Court alleging Defendants violated the First Amendment, the Fourteenth Amendment, the NVRA, and the Voting Rights Act of 1965. (Filing No. 1.)

On August 12, 2019, Plaintiffs filed an Emergency Motion for Preliminary Injunction, seeking injunctive relief to have Schmitz's name placed on the November 2019 ballot. (Filing No. 10.) Plaintiffs' brief supporting that Motion states, "[t]he nature of the emergency is that ballots are expected to be printed on or before August 23, 2019. Once the ballots are printed, Schmitz cannot stand as a candidate in the general election."[2] (Filing No. 11 at 5.) Plaintiffs' Memorandum of Law in Support of their Emergency Motion for a Preliminary Injunction asserts only the First and Fourteenth Amendment claims as a basis for a preliminary injunction. (Filing No. 11.) Plaintiffs' counsel confirmed at oral argument that Plaintiffs' motion for preliminary injunction rests on their First Amendment claim.

## II.     LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council,*

---

[2] Defendants the Board and Eldridge clarify that "September 16, 2019 is the deadline under Indiana law for the Election Board to print and deliver absentee ballots, which must be mailed on September 21 to voters who have filed an application." (Filing No. 23 at 3.) Those Defendants asked the Court to rule on this motion "by September 5, if at all possible." *Id.*

*Inc.*, 555 U.S. 7, 20 (2008). "To obtain a preliminary injunction, a party must establish [1] that it is likely to succeed on the merits, [2] that it is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in its favor, and [4] that issuing an injunction is in the public interest." *Grace Schools v. Burwell*, 801 F.3d 788, 795 (7th Cir. 2015); *see Winter*, 555 U.S. at 20. "The court weighs the balance of potential harms on a 'sliding scale' against the movant's likelihood of success: the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015). "The sliding scale approach is not mathematical in nature, rather it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 678 (7th Cir. 2012) (citation and internal quotation marks omitted). "Stated another way, the district court 'sit[s] as would a chancellor in equity' and weighs all the factors, 'seeking at all times to minimize the costs of being mistaken.'" *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)).

### III. DISCUSSION

Plaintiffs seek a preliminary injunction to have Schmitz's name placed on the November 2019 municipal election ballot for the office of Mayor of Indianapolis. (Filing No. 10.) They ask that all of the 1,115 disallowed signatures, including those of the Plaintiff voters, be counted for purposes of the petitions Schmitz submitted on July 1, 2019. (Filing No. 11 at 12.)

The Seventh Circuit has laid out the standard for preliminary injunctions:

> To obtain a preliminary injunction, a plaintiff must first show that: (1) without such relief, it will suffer irreparable harm before final resolution of its claims; (2) traditional legal remedies would be inadequate; and (3) it has some likelihood of success on the merits. *E.g.*, *Valencia v. City of Springfield*, 883 F.3d 959, 965 (7th Cir. 2018), citing *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If a plaintiff makes such a showing,

5

> the court next must weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one. *See Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). This assessment is made on a sliding scale: "The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Girl Scouts of Manitou Council*, 549 F.3d at 1086, quoting *Roland Mach. Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 387 (7th Cir. 1984). Finally, the court must ask whether the preliminary injunction is in the public interest, which entails taking into account any effects on non-parties. *Id.* at 1086. Ultimately, the moving party bears the burden of showing that a preliminary injunction is warranted. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam).

*Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018), *petition for cert. filed*, (U.S. Mar. 15, 2019) (No. 18-1203). The Court finds that Schmitz would suffer irreparable harm if no injunction issues, and the Defendants do not dispute that conclusion. However, Defendant Lawson contends that Plaintiffs have an adequate remedy at law, and all Defendants argue that Plaintiffs cannot establish any likelihood of success on the merits. ([Filing No. 23 at 4](#); [Filing No. 24 at 13-14](#).)

**A.** **Adequate Remedy at Law**

Defendant Lawson asserts that Plaintiffs have an adequate remedy at law, and thus the Court should deny their motion for an injunction. "Under Indiana Code § 3-6-5-34, someone unsatisfied with a decision of a county election board may appeal such a decision to the circuit court, superior court, or probate court." ([Filing No. 24 at 14](#).) Under this statute, Lawson argues that "there was an adequate remedy at law: the judicial review itself." *Id.*

While judicial review might be a method of recourse for the Plaintiffs, here it is not. Plaintiffs request a very specific form of relief—to have Schmitz placed on the ballot as a candidate for Mayor of Indianapolis in November. The November 2019 municipal election will only happen one time, and if Schmitz does not appear on the ballot even though he has a legal right to do so, no court can offer an adequate remedy. A court cannot order the Defendants to hold the election again with Schmitz's name on the ballot. The specific performance requested in Plaintiffs'

Emergency Motion for Preliminary Injunction distinguishes it from the cases cited by Lawson, which both involved monetary damages. *See Scales v. Hosp. House of Bedford*, 593 N.E.2d 1283 (Ind. Ct. App. 1992); *Wisconsin Cent. Ltd. v. Pub. Serv. Com'n of Wisconsin*, 95 F.3d 1359 (7th Cir. 1996). The Court finds that Plaintiffs do not have an adequate remedy at law, and thus meet the second prong required for a preliminary injunction.

**B.      Likelihood of Success on the Merits**

In the Complaint, Plaintiffs allege the Board's decision to disallow 1,115 signatures from Schmitz's petition "violated Plaintiffs' rights of association and not to be coerced to associate, under the First Amendment to the United States Constitution as incorporated and extended to the States through the Fourteenth Amendment." (Filing No. 1 at 7.) They also allege "[t]hese registered voters received unequal protection of the law in that the statute in question is unreasonably and unconstitutionally vague, contradictory, inherently can be interpreted in an arbitrary and capricious manner, and was so interpreted." *Id.* To obtain a preliminary injunction, Plaintiffs must show, at a minimum, that they have "a 'better than negligible' chance of success on the merits." *Girl Scouts of Manitou Council*, 549 F.3d at 1096 (quoting *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 897 (7th Cir. 2001)).

The Supreme Court of the United States has recognized that the right to have one's name placed on the ballot in an election is protected by the Constitution, and state or local governments can infringe upon that right with burdensome "candidate eligibility requirements." *Anderson v. Celebrezze*, 460 U.S. 780, 786 (1983). Strict ballot access laws burden "two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). But not all candidate eligibility

requirements run afoul of the Constitution. The Supreme Court has acknowledged that "as a practical matter, there must be substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974).

The constitutionality of a ballot-access restriction depends on "a practical assessment of the challenged scheme's justifications and effects." *Stone v. Bd. of Election Comm'rs for City of Chi.*, 750 F.3d 678, 681 (7th Cir. 2014). That assessment is governed by the two-step analysis that the Supreme Court announced in *Anderson*. The court "first consider[s] the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." 460 U.S. at 789. It "then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule" and weigh those interests against the burdened rights. *Id.* In doing so, the court looks at the "legitimacy and strength" of the proffered interests, as well as "the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.* In *Burdick v. Takushi*, the Supreme Court emphasized that this test applies to *all* First and Fourteenth Amendment challenges to state election laws. 504 U.S. 428, 432–34, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992).

In *Acevedo v. Cook County Officers Electoral Board*, 925 F .3d 944(7th Cir. 2019), the Seventh Circuit discussed the level of scrutiny with which it reviews a ballot-access restriction applied under the "flexible *Anderson-Burdick* standard." Id. at 948. The court explained that the level of scrutiny depends on the extent of its imposition: "the more severely it burdens constitutional rights, the more rigorous the inquiry into its justifications." *Libertarian Party of Illinois v. Scholz*, 872 F.3d 518, 523-24 (7th Cir. 2017). It held that "Nondiscriminatory restrictions that impose only slight burdens are generally justified by the need for orderly and fair

elections," whereas severe burdens must be "narrowly tailored to serve a compelling state interest." *Id.* at 524 (citation omitted). Because of this dichotomy, "[p]ractically speaking, much of the action takes place at the first stage of *Anderson's* balancing inquiry." *Stone*, 750 F.3d at 681.

   1. **The Character and Magnitude of the Asserted Injury**

The only aspect of Indiana's ballot-access laws that Plaintiffs challenge is the Registered-Address Requirement. Plaintiffs argue that "only one section of the statute supports the Board's action in disallowing the signatures in question, whereas two other sections of the statute and the petition form itself require the current address of the person signing." (Filing No. 11 at 10.) According to Plaintiffs, the relevant statute is ambiguous because some sections require signers to list the address at which they are registered to vote while a different section and the CAN-44 form ask only for the signer's "residence address." (Filing No. 26 at 7-8.) Plaintiffs also argue that the Board's actions cannot be justified by a desire to ensure that all of Schmitz's signers were voters registered in Marion County because at the Marion County Election Board meeting of July 30, 2019, no member of the Board contested that all 1,115 disallowed signatures belonged to registered Marion County voters. (Filing No. 11 at 10.)

The Board and Eldridge (the "Marion County Defendants") respond that the Registered-Address Requirement is unambiguous—"in three separate, consistent statutes, the Indiana Election Code plainly confirms that a prospective independent or minor-party candidate must obtain from each petitioner the address at which he or she is registered to vote." (Filing No. 23 at 6.) Looking at Indiana Code § 3-7-39-1, which requires voters to "transfer the voter's registration to the address where the voter currently resides by sending a transfer of registration on a prescribed form to the circuit court clerk or board of registration," the Marion County Defendants argue that, under Indiana law, the address where a voter is registered to vote and that voter's "residence address"

are one and the same. *Id.* at 8-9. Thus, the CAN-44 form's requirement that a signer write their "residence address" makes sense—the law requires that the signer give the address at which the person is registered to vote, and that address must, by law, be the same as their residence address. *Id.* at 8.

The Marion County Defendants also contend the Registered-Address Requirement is reasonable and is not discriminatory. *Id.* at 10-13. They argue the burden imposed on voters is minor—they simply have to write the address at which they are registered to vote on the CAN-44 form instead of some other address. *Id.* at 10. In support of their position, they cite *Nader v. Keith*, 385 F.3d 729, 233 (7th Cir. 2004). In *Nadar,* independent candidate Ralph Nader sued Illinois officials who disallowed 12,327 of his petitions and refused to place him on the Presidential ballot in 2004. Nader challenged three Illinois election regulations including a provision that "require[d] that the address on each petition be the address at which the petitioner is registered to vote."[3] *Nader*, 385 F.3d at 731. Nader moved for a preliminary injunction, which the district court denied. The Seventh Circuit affirmed that denial, stating that "[i]f the petition were not required to contain any identifying information (such as date of birth, mother's maiden name, or, the identifier that Illinois has chosen, the address at which the petitioner is registered to vote), there would be no practical impediment to a person's signing the name of anyone he knew to be a registered voter." *Id.* at 734. In other words, it was reasonable for a state to require signers to give a bit of personal information to ensure they are who they say they are, and the address at which the signers are registered to vote is a reasonable bit of information to require. Lawson's arguments as to the

---

[3] Nader also challenged a provision requiring any candidate who has not been nominated by a party that received at least 5% of the votes in the most recent statewide election to obtain nominating petitions signed by at least 25,000 qualified voters and one requiring that the petitions be submitted to the state board of elections at least 134 days before the election. *Nader*, 385 F.3d at 731.

Registered-Address Requirement's burden on voters echo those of the Marion County Defendants. (Filing No. 24.)

The Court is convinced that the statutes involved in this case unambiguously require independent candidates for office to obtain signatures from registered voters accompanied by the address at which each voter is registered. First, Indiana Code § 3-8-6-2 states that voters who sign the petition must be "registered to vote at the address set forth on the petition on the date the county voter registration office certifies the petition under section 8 of this chapter; and qualified to vote for the candidate." Then, Indiana Code § 3-8-6-6(a)(3) reiterates that each petition must contain "[t]he residence address of each petitioner as set forth on the petitioner's voter registration record," equating the term "residence address" with the address on the signer's voter registration record. The statute then mentions "residence address" again, stating, "[f]or a petition of nomination to be considered valid by the officer required to receive the petition, the county voter registration office in the county where the petitioner is registered must certify that each petitioner is a voter at the residence address listed in the petition at the time the petition is being processed." *Id*. at § 3-8-6-8. Combined with Indiana Code § 3-7-39-1, which requires voters to "transfer the voter's registration to the address where the voter currently resides by sending a transfer of registration on a prescribed form to the circuit court clerk or board of registration," there can be no misunderstanding that when the Indiana General Assembly wrote the phrase "residence address" in the code, it meant the address at which a person is registered to vote.

The Court is persuaded that, in the abstract, the Registered-Address Requirement is constitutional. The Seventh Circuit made clear in *Nader* that states are allowed to require signers of petitions in support of independent candidates to provide identifying information, and that the

address at which a voter is registered to vote is an acceptable form of that identifying information.[4] 385 F.3d at 734. It does not present a greater burden to signers to list their voter registration address than it would to list their current address, or to list some other piece of information about themselves that they would know offhand and could identify them to the Board.

What troubles the Court, and what distinguishes this case from *Nader*, is the CAN-44 form. The form asks signers only for their "RESIDENCE ADDRESS." (Filing No. 10-1.) And while it can be assumed that anyone who has read Indiana Code §§ 3-8-6-2, -6(a)(3), and -8 is aware that the term "residence address" is shorthand for the address at which one is registered to vote, the Court does not assume that every signer of a CAN-44 form has read those sections of the statute. The CAN-44 form does not alert any person who looks only at it that they are expected to provide the address at which one is registered to vote. Nor does the form refer signers to §§ 3-8-6-2 and 6(a)(3), the only sections of the statute that mention the Registered-Address Requirement.

Thus, it is not the Registered-Address Requirement itself that is a burden to Indiana voters, it is the fact that the requirement is not communicated to those voters unless they take it upon themselves to unearth and read Indiana's election laws. The Indiana Election Division, which prints the CAN-44 form, could have avoided this issue by explicitly requiring the signers to record their "voter registration address" instead of their "RESIDENCE ADDRESS."[5] It seems that Indiana, out of either negligence or malice, has made it more difficult for voters to support independent candidates not by requiring those candidates to obtain signatures accompanied by

---

[4] Additionally, the Supreme Court of Pennsylvania upheld a statute requiring petitioners for Ralph Nader to list their voter registration address against challenges that it violated the Pennsylvania Constitution and the Federal Voting Rights Act, 42 U.S.C. § 1971(a)(2)(B).

[5] The Court disagrees with the theory, asserted by Lawson at oral argument, that explicitly asking for a "voter registration address" on the CAN-44 form would somehow confuse Indiana voters and make them *less likely* to provide the address at which they are registered to vote. Voters in Indiana are intelligent and capable, and the Court is confident that if the State had clearly asked people to list their "voter registration address" when signing the CAN-44, it would have been much likelier to obtain that address.

registered-voting addresses, but by misleading the signers by indicating to them that they should provide only their "residence address." The question presented by the *Anderson-Burdick* framework is how severely this misleading scheme burdens Indiana voters.

In the Court's view, although the misleading wording on the CAN-44 form is ill-advised and easily fixable, it ultimately does not present a great burden to Indiana voters (or candidates) because there are several ways Indiana voters (and candidates) can ensure they provide the correct address. First, they can familiarize themselves with Indiana's election laws, specifically Indiana Code §§ 3-8-6-2, -6(a)(3), and -8, which make clear independent candidates are required to obtain signatures accompanied by voter-registration addresses. Indiana presumes its citizens are familiar with State laws. *Bellwether Prop., LLC v. Duke Energy Indiana, Inc.*, 87 N.E.2d 462, 467 (Ind. 2017) ("A longstanding legal principle assumes that citizens know the law and must obey it—on pain of losing their lives, liberty, or property for noncompliance.").

Secondly, the Board's petition process allows potential candidates a second bite at the apple. "Voter Registration allows candidates to submit signatures gathered on CAN-44 forms in batches so that Voter Registration can certify them on a rolling basis and keep the candidate apprised of his or her progress before the filing deadline." (Filing No. 23-5 at 3). According to Michele Cash, Chief Deputy for the Marion County Board of Voters Registration, "this allows the candidate to stay apprised of how many additional signatures they need to meet the statutory requirement and stop gathering signatures once they have reached it." *Id*. As argued by the Marion County Defendants at the hearing, because the Board conducts a "rolling tally of the petition" a potential candidate may submit their petitions periodically and to find out whether they have enough valid signatures to make it onto the ballot. If a signature is rejected because the signer listed an incorrect or ineligible address, the candidate has an opportunity to return to that signer

13

for another signature, this time accompanied by the correct address or to secure additional signers in compliance with the Registered-Address Requirement. To each certification page that Voter Registration provided to Schmitz, it attached the petitions that Voter Registration reviewed, on which it marked its determination as to each signature on the rights side of the page. *Id*. Thus, Schmitz knew each time he received the certification forms (June 21, June 26, and July 1, and July 9, 2019) which signatures were not counted and the reason why. *Id*. This practice reduces the burden of the Registered-Address Requirement on both candidates and voters.

Indiana statutes unambiguously require independent candidates to obtain signatures accompanied by the signer's voter-registration address, and the Seventh Circuit affirmed that requirement constitutional in *Nader*. Although the way Indiana has implemented the requirement leaves something to be desired, the burden of the requirement on Indiana voters is minor because a signer (or candidate) familiar with Indiana law will know he is required to give his voter-registration address, and because the Board's "rolling tally" procedure provides potential candidates the opportunity to rectify invalid signatures. The character and magnitude of Plaintiffs' asserted injury is slight, and therefore the Court need not analyze the Registered-Address Requirement under a strict scrutiny analysis.

    **2.**    <u>**State Justifications for the Rule**</u>

Because the burdens of the Registered-Address Requirement are slight, the Court conducts a non-rigorous inquiry into its justifications. *Scholz*, 872 F.3d at 523-24. The Marion County Defendants offer a slew of justifications for the Registered-Address Requirement, which they characterize as "a mechanism for ensuring that the signers of the petition are actually registered voters." (Filing No. 23 at 13 (quoting *Nader v. Keith*, No. 04 C 4913, 2004 WL 1880011 at *8 (N.D. Ill. Aug. 23, 2004)). They provide four justifications for the Registered-Address

Requirement: (1) regulating the number of candidates on the ballot, (2) assuring the winner commands at least a strong plurality of votes without the necessity of a runoff election, (3) preserving the integrity of the state's electoral process and avoiding deception, and (4) preventing voter confusion. *Id.* at 14.

Although the benefits of some of these justifications might be overstated, they clear the low bar Defendants must meet in the *Anderson-Burdick* analysis. Because the Registered-Address Requirement is not discriminatory and the burden it imposes on voters' rights is slight, it is "justified by the need for orderly and fair elections." *Scholz* at 524. Fair and orderly elections are promoted by reducing confusion and assuring the winner commands a strong plurality of votes, as Defendants observe. The state interest of fair elections justifies the slight burden the state has placed on voters by requiring independent candidates to get voter-registration addresses on their petitions to run for office.

The balancing of the *Anderson-Burdick* analysis tips in favor of the Defendants. Therefore, the Plaintiffs have not shown any likelihood of success on the merits, which is a requirement of a successful motion for a preliminary injunction[6]. Because the Plaintiffs have not shown a likelihood of success on the merits of their First and Fourteenth Amendment claims, the Court **denies** their Emergency Motion for Preliminary Injunction.

## IV. CONCLUSION

The Court has "weigh[ed] all the factors" and sought "at all times to minimize the costs of being mistaken." *Stuller, Inc.*, 695 F.3d at 678. The Court has done so in light of the Supreme Court's warning that "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 376. For the

---

[6] Having failed to show success on the merits, the Court does not find that the balance of equities tips in the Plaintiffs favor, or that issuing an injunction is in the public interest.

reasons set forth above, Plaintiffs' have not made this clear showing. Accordingly, Plaintiffs' Emergency Motion for a Preliminary Injunction (Filing No. 10) is **DENIED**.

    **SO ORDERED.**

Date:  9/5/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Mark Small
ATTORNEY AT LAW
marksmall2001@yahoo.com

Daniel Bowman
OFFICE OF CORPORATION COUNSEL
daniel.bowman@indy.gov

Stephanie L. Boxell
FAEGRE BAKER DANIELS LLP (Indianapolis)
stephanie.boxell@faegrebd.com

Jefferson S. Garn
INDIANA ATTORNEY GENERAL'S OFFICE
Jefferson.Garn@atg.in.gov

Anne Celeste Harrigan
OFFICE OF CORPORATION COUNSEL
anne.harrigan@indy.gov

Rebecca L. McClain
INDIANA ATTORNEY GENERAL'S OFFICE
rebecca.mcclain@atg.in.gov

Parvinder Kaur Nijjar
INDIANA ATTORNEY GENERAL'S OFFICE
parvinder.nijjar@atg.in.gov

Anne Kramer Ricchiuto
FAEGRE BAKER DANIELS LLP (Indianapolis)
anne.ricchiuto@FaegreBD.com

Robert Austin Rowlett
INDIANA ATTORNEY GENERAL'S OFFICE
robert.rowlett@atg.in.gov